UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL HITCHCOCK,

                Petitioner,

vs.                                   Case No. 3:05-cv-487-J-33MCR

SECRETARY, DOC, et al.,

                Respondents.

_____

**ORDER**

**I. Status**

Petitioner initiated this action by filing a *pro se* Petition (Doc. #1) (hereinafter Petition) for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He also filed an Appendix (Doc. #2) (hereinafter Appendix).  The Petition challenges a 1999 state court (Duval County) conviction for three counts of capital sexual battery.

Eleven grounds are raised in the Petition: (1) trial court erred in refusing to allow Petitioner to tell the jury what the interrogating detectives informed him was the nature of the penalty; (2) trial court erred in refusing to instruct the jury on the lesser included offense of simple battery when trial counsel refused to agree to have the jury instructed on attempted sexual battery as well; (3) trial court erred in denying Petitioner's motion for judgment of acquittal; (4) ineffective assistance of

counsel for failure to conduct a reasonable investigation into the state's medical evidence; (5) ineffective assistance of counsel for failure to consult with and use a defense medical expert witness; (6) ineffective assistance of counsel for failure to object to the tender of Nurse Practitioner Mary Prevatt as an expert of child sexual abuse; (7) ineffective assistance of counsel for failure to object to the expert testimony of Mary Prevatt not meeting admissibility under Frye[1]; (8) ineffective assistance of counsel for failure to prepare for and counter the testimony of Nurse Practitioner Mary Prevatt; (9) ineffective assistance of counsel for failure to suppress, exclude and object to Petitioner's confession; (10) ineffective assistance of counsel for failure to object to a discovery violation by the state; and (11) ineffective assistance of counsel for admitting the team assessment summary, a hearsay document, into evidence.

Petitioner appealed the dismissal of his federal Petition, asserting that this Court erred in holding certain claims to be procedurally defaulted from federal habeas review.[2]   The Eleventh

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) (establishing the "Frye rule" barring evidence derived from novel scientific techniques).

[2] The Eleventh Circuit recognized that the District Court considered on the merits and denied the claims that were raised on appeal by Petitioner's post-conviction counsel and were denied by the First District Court of Appeal; however, the Eleventh Circuit did not specifically consider, in its Opinion, any of the grounds addressed on the merits by the District Court.  (Doc. #37 at 3 n.2).

Circuit, in its Opinion of January 7, 2010, found that Petitioner's federal claims were not barred from review and reversed and remanded for further proceedings not inconsistent with the opinion. (Doc. #37).

Respondents were directed to respond to grounds four, six, seven, eight, ten and eleven of the Petition, and they were advised not to refer back to their previous response. (Order, Doc. #38). Petitioner moved to expand the record, and the motion was granted. (Order, Doc. #41). Respondents filed a Supplemental Answer to Petition for Writ of Habeas Corpus (Doc. #45) (hereinafter Supplemental Response).[3] Petitioner filed a Supplemental Reply to the Respondents' Answer to Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. #48). See Docs. #7, #38, #41, #47).

With respect to grounds one, two, three, five, and nine, the Court will also consider Respondents' November 10, 2005, Answer in Response to Order to Show Cause (Doc. #14) (hereinafter Response), the Exhibits (Doc. #17), and Petitioner's January 30, 2006, Traverse to State's Answer (Doc. #24). See Doc. #7.

---

[3] The Court hereinafter refers to the Exhibits (Doc. #17) as "Ex." Although the Respondents were directed to provide the Court with a copy of the case study, Respondents have notified the Court that the case study is not contained within the state court record; however, Petitioner included a copy of the case study as Exhibit A of the Appendix (Doc. #2). The case study as well as the other exhibits to the Appendix have been reviewed and considered in rendering the Court's decision.

## II.  Evidentiary Hearing

The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  No evidentiary proceedings are required in this Court.  See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## III.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (hereinafter AEDPA).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed *de novo*, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[4] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

---

[4] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

- 5 -

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).  Thus, to the extent Petitioner's claims were adjudicated on the merits in the state courts,[5] they must be evaluated under § 2254(d).

## IV.  Timeliness

Respondents calculate that the Petition is timely filed, Response at 6-7, and the Court will accept this calculation.

## V.  Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of trial counsel.  "The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The

---

[5] The Court's evaluation is limited to examining whether the highest state court's resolution of the claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court.  <u>See</u> <u>Newland v. Hall</u>, 527 F.3d 1162, 1199 (11th Cir. 2008), <u>cert</u>. <u>denied</u>, 129 S.Ct. 1336 (2009).

Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

## VI.  Procedural History

Petitioner was charged by amended information, filed on November 23, 1998, with three counts of sexual battery. Ex. A.  A

jury trial was conducted, Ex. B,[6] and Petitioner was convicted of three counts of capital sexual battery. Ex. C. A motion for new trial was filed, Ex. D, and the motion was denied. Ex. E; Ex. G at 340. Petitioner was sentenced to life terms in prison on each count, to be served consecutively. Ex. F; Ex. G at 346.

Petitioner appealed. Ex. H. He raised three grounds: (1) the trial court erred in refusing to allow appellant to tell the jury what the interrogating detectives informed him was the nature of the penalty for the charged offenses; (2) the trial court erred in refusing to instruct on the lesser included offense of simple battery because defense counsel refused to agree to have the jury instructed on attempted sexual battery as well; and (3) the trial court erred in denying appellant's motion for judgment of acquittal because the state failed to prove that the crimes occurred within the time frame narrowed by the state's amended statement of particulars. The state answered, Ex. I, and Petitioner replied. Ex. J. The First District Court of Appeal affirmed per curiam on June 28, 2000. Ex. K. The mandate issued on July 14, 2000. Ex. L.

On April 5, 2001, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, Ex. M; on June 1, 2001, Petitioner filed an amended *pro se* Rule 3.850 motion,

---

[6] A number of pages of the transcript of the trial proceedings are missing; however, this will not prevent the Court from addressing the claims before the Court.

Ex. N; and on September 26, 2001, Petitioner filed a second amended *pro se* Rule 3.850 motion.  Ex. O.  On November 1, 2002, Petitioner, through counsel, filed a Third Amended Motion for Postconviction Relief (hereinafter Third Amended Rule 3.850 Motion).  Ex. P.  The following grounds were raised therein:  (1) ineffective assistance of counsel for failure to prepare for and counter the testimony of Nurse Practitioner Mary Prevatt, a state witness;[7] (2) ineffective assistance of counsel for failure to retain and utilize the services and testimony of a child psychologist; (3) ineffective assistance of counsel for failure to suppress, exclude and object to Petitioner's confession; (4) the state committed a Brady[8] violation, keeping key evidence from the Petitioner and preventing him from receiving a fair trial; and (5) ineffective assistance of counsel for submitting the team emergency assessment summary, prepared by case coordinator Christy Wright of the Children's Crisis Center, into evidence for review by the jury.  Id.

Petitioner was represented by counsel at an evidentiary hearing conducted on July 8, 2003 and July 16, 2003.  Ex. Q. Ground two was abandoned.  Id. at 1176.  An Order Denying Defendant's Motion for Post Conviction Relief was filed on October 15, 2003.  Ex. R.

---

[7] This issue contains twelve subclaims (a-l).

[8] Brady v. Maryland, 373 U.S. 83 (1963).

On appeal, Petitioner was represented by the same counsel who represented him on the Third Amended Rule 3.850 Motion and evidentiary hearing. After an initial appeal brief was filed by counsel on February 11, 2004, Petitioner filed a *pro se* Request for Stay of Proceedings and Request for Leave to File Supplement Initial Brief, on February 26, 2004, pursuant to the mailbox rule. Ex. Y at 2. The *pro se* Request for Stay of Proceedings and Request for Leave to File Supplement Initial Brief was denied by the First District Court of Appeal on March 4, 2004. Ex. Z.

In the Amended Initial Brief of Appellant filed by counsel and dated March 11, 2004, two issues are raised: (1) the trial court erred in failing to find that Appellant suffered from ineffective assistance of counsel due to his trial lawyer's failure to use a defense medical expert at trial, and (2) the trial court erred in failing to find that Appellant suffered from ineffective assistance of counsel due to his trial lawyer's failure to bring a pre-trial motion to suppress Defendant's confession. Ex. S at ii. These issues correlate with grounds 1(b) and 3 of the Third Amended Rule 3.850 Motion. The state filed an answer brief.[9] Ex. T. A reply brief, dated April 2, 2004, was filed by Petitioner's counsel. Ex. U. On December 27, 2004, the First District Court of Appeal

---

[9] This brief was apparently filed in response to the initial appeal brief, as it is dated March 8, 2004, prior to the date of the Amended Initial Brief of Appellant, March 11, 2004.

affirmed per curiam.  Ex. V.  The mandate issued on January 12, 2005.  Ex. W.

## VII.  Findings of Fact and Conclusions of Law

### A.  Ground One

In the first ground, it is asserted that the trial court erred in refusing to allow Petitioner to tell the jury what the interrogating detectives informed him would be the nature of the penalty he would face if he went to trial, which was a penalty of life in prison.  The issue was raised on appeal and affirmed by the First District Court of Appeal.

At first blush this claim appears to be a state law claim addressing an evidentiary ruling by the trial court.  To the extent it was presented as a claim of trial court error based on an improper trial court evidentiary ruling, without an underlying due process claim, it presents an issue of state law that is not cognizable in this federal habeas proceeding.  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.  See Coleman v. Thompson, 501 U.S. 722 (1991).  This Court will not reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Thus, to the extent this ground is a state law claim complaining about an evidentiary ruling by the trial court, Petitioner is not entitled

to federal habeas corpus relief as there has been no breach of a federal constitutional mandate.

It does appear, however, that appellate counsel cited Crane v. Kentucky, 476 U.S. 683 (1986), a case concerning the deprivation of rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  In Crane, 476 U.S. at 691, the Supreme Court found the Kentucky courts had erred in forbidding Crane's efforts to introduce testimony concerning the physical environment and the circumstances in which his confession was secured, finding that the circumstances of an interrogation and confession bear on the issue of credibility, a factual issue relevant to guilt or innocence.

In the instant case, Petitioner was allowed to testify as to the circumstances of his confession, however, he was prohibited from stating he was facing a life sentence, although he was allowed to attest that the severity of the penalty was so harsh, it made him make a decision to make a statement/confession that would get him probation.  Ex. B at 544, 600.  Petitioner did not face the blanket exclusion of all testimony regarding his version of the events.  Indeed, he testified as to the circumstances of the interrogation and the varied details about the environment he was in when he made his confession.  He was only limited in referencing the specific life sentence he faced.  "This is not the kind of blanket exclusion prohibited by Crane."  United States v. Gibbs, 237 Fed.Appx. 550, 560 (11th Cir.) (per curiam) (not selected for

publication in the Federal Reporter), cert. denied, 552 U.S. 1005 (2007).

To the extent a federal constitutional claim was raised on appeal, the decision of the First District Court of Appeal is entitled to deference under AEDPA. The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground one because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### B.  Ground Two

In ground two, Petitioner claims that the trial court erred in refusing to instruct the jury on the lesser included offense of simple battery when trial counsel refused to agree to have the jury instructed on attempted sexual battery as well. This ground was raised on appeal and affirmed per curiam.

The claim was presented to the First District Court of Appeal as a claim of trial court error, not a claim of constitutional dimension. The claim exhausted in the state court system was a state law claim. There is no entitlement to habeas relief on state

- 13 -

law errors.  Since there was no breach of a federal constitutional mandate, Petitioner is not entitled to habeas relief on ground two.

In the alternative, to the extent a federal constitutional claim was raised on appeal, the decision of the First District Court of Appeal is entitled to deference under AEDPA.  The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground two because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### C.  Ground Three

In his third ground, Petitioner claims the trial court erred in denying the motion for judgment of acquittal.  The ground was raised on appeal, and the appellate court per curiam affirmed.

The trial court record shows that a motion for judgment of acquittal was made at the close of the state's case:

> MR. MILLER [defense counsel]:  Yes, Your Honor.
>
> At this time I would like to make an Oral Motion for Judgment of Acquittal, and I would rely on Audano v. State, 674 So.2d 882, which is a Florida Second DCA, 1996 case.

Your Honor, it is my contention that the evidence presented by the State, places the child at the ages of eight or nine years old. On two occasions she stated -- one occasion she stated eight or nine.

If this Court will take notice of her date of birth, which is July 1st, and she is twelve years old at this moment, going back in time when she was nine years old, that would have been July '95 through July '96. When she was eight years old, that would have been July '94 through July '95.

THE COURT: Hold on just a second. July '94.

MR. MILLER: To July '95, she was eight years old.

THE COURT: All right.

MR. MILLER: July '95 through July '96.

THE COURT: Nine.

MR. MILLER: She was nine.

Your Honor, the original information in this case had a time frame of 1-92 through 12-95. I filed a Motion for More Definite Statement of Particulars, and I received an Amended Information and Amended Statement of Particulars which states now the alleged offenses occurred between January 1st, 1992, and December 31st, 1994.

Your Honor, it is my contention that the State has not placed on any conclusive, reliable, or substantial evidence that these allegations occurred during the time frame alleged in the information. If it happened between when she was eight and nine, looking at her birth date in the information, there is only a small period of time in 1994 that it could have happened, and there is a 16-month period of time -- or, I'm sorry. There is a, I guess, a year and-a-half period of time where it could have happened outside the

- 15 -

information alleged in the information in the Amended Statement of Particulars.

The only competent evidence is that she told Detective Eason and Nurse Prevatt at the time when she was eight, or nine, and I think that is sufficient to prevail this judgment -- win a judgment of acquittal.

And I would state -- rely on Audano v. State, which states, "When a statement of particulars narrows the time within which the crime occurred, and the prosecution fails to show that the defendant committed that offense within that time frame, a conviction on that charge must be reversed."

THE COURT:   Correct me if I'm wrong before we go to the State; assuming that the child was eight, because there was testimony that the child could have been eight or nine.

MR. MILLER:  Yes, You Honor.

THE COURT:  Assuming she was eight, that would give you a five-month period.

MR. MILLER:  Yes, Your Honor, but they have failed --

THE COURT:  In the Amended Information.

MR. MILLER:  But they failed to state whether it was during eight or nine.  And a fourth of that time is outside the period.  I would say they have failed to meet their burden.

THE COURT:  Which is usually why the State does not give, in child cases, does not give such a narrow window.

MR. MILLER:  I agree.

. . . .

MRS. BRAY [prosecutor]  I have before the Court a chart which listed July 1, 1986, [A.G.] is born.

- 16 -

It goes down to list how old she is through certain dates and what grades she is in.

Now testimony came out of the victim in this case on cross examination by Mr. Miller that she was in the 2nd and 3rd grade while this was happening.  That clearly places her in the window of January 1st, 1994, through December 31, 1994.  We know she is in the 2nd and 3rd grade and she is seven and eight years of age.

THE COURT:  How do we know that?

MRS. BRAY:  Because if we count back from the date of the birth, we know that.

THE COURT:  How do we know that?  What testimony brought that out?

MRS. BRAY:  Her testimony she was in the 2nd and 3rd grade.

Ex. B at 496-500.

The state continued, pointing out that the victim attested she was six years old when she met the defendant, and the incidents began occurring a couple of months afterwards.  Id. at 501.  The motion for judgment of acquittal was denied, id. at 506, and upon renewal, the motion was again denied.  Id. at 603.

A denial of a motion for judgment of acquittal ordinarily presents a state law claim.  It only arises to the level of a claim of constitutional dimension if it is asserted that the evidence was insufficient to support the conviction, and as a result of the deficiency, there was a violation of due process of law.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the

offense charged.  Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State."  Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt.  Thompson, 118 F.3d at 1448.

Indeed, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed sexual battery as charged in the amended information within the time frame as alleged therein.  Thus, to the extent the claim was raised in the federal constitutional sense, and to the extent that the federal constitutional claim was addressed, the state court's rejection of this ground is entitled to deference as required pursuant to AEDPA. The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground three because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.

## D. Ground Four

In ground four of the Petition, Petitioner asserts his trial counsel was ineffective for failure to conduct a reasonable investigation into the state's medical evidence. Petitioner raised this claim as ground 1(a) of the Third Amended Rule 3.850 Motion. Ex. P. After conducting an evidentiary hearing, the trial court denied the motion, referencing the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), for reviewing a claim of ineffective assistance of counsel. Ex. R at 576.

In rejecting this claim, the trial court, in pertinent part, said:

> In sub-claims a and b, Defendant contends that counsel rendered ineffective assistance by "failing to conduct a reasonable investigation into the State's medical evidence" and "by failing to consult with and use a defense medical expert witness to counter the State's witness, Nurse Mary Prevatt." (Defendant's Motion, pages 7-8.) Upon review of the trial transcripts, this Court notes that Nurse Practitioner Mary Prevatt was the only expert presented at trial to testify regarding medical evidence. (Exhibit "C.") Ms. Prevatt testified that she did not find anything during her examination of the victim. (Exhibit "C," pages 364-365.) Ms. Prevatt testified that her examination of the victim was inconclusive, in that, she could neither confirm nor deny the allegations of sexual abuse. (Exhibit "C," pages [sic] 380.)
>
> During the evidentiary hearing, Defendant's former trial counsel, Mr. Mark

- 19 -

Miller, testified that he consulted with Dr.
Indrani Joseph[10] regarding this case, but he
did not retain an expert. (Exhibit "D," pages
19-20, 31-32.) Mr. Miller testified that Dr.
Joseph explained to him prepubescent and
postpubescent changes that occur in females.
(Exhibit "D," pages 20-21). Mr. Miller
testified that Dr. Joseph explained to him
that based upon the changes that occur in a
female's body, the lack of physical findings
in the victim were possible. (Exhibit, "D,"
pages 20-21.) Mr. Miller testified that,
based upon his discussion with Dr. Joseph, Ms.
Prevatt's conclusions were accurate even if
they were slanted and he felt he could cross-
examine her on the slant and he did not need
an expert. (Exhibit "D," pages 78-80.)

The defense then presented the taped
deposition of Dr. Russel Bain. It should be
noted that counsel conceded that Dr. Bain
supported Ms. Prevatt's statement that there
are "no objective physical bodily findings of
sexual abuse in the victim's body in a
majority of cases." (Exhibit "D," page[s] 74-
75.) Dr. Bain testified that "the more times
the vaginal area is penetrated the greater
likelihood that there will be hymenal
findings," but acknowledged that there would
be cases w[h]ere no findings were present.
(Exhibit "D," pages 105-107, 117-118.) Dr.
Bain testified that a premenarche girl would
be more susceptible to damage than a
postmenarche girl if the same trauma was done.
(Exhibit "D," page 117.) Dr. Bain testified
that in a majority of cases there are no
findings but that does not mean the abuse did
not take place and that any type of abuse
could leave no findings. (Exhibit "D," pages

---

[10] Mr. Miller explained that Dr. Indrani Joseph, a doctor at
Shands hospital, had previously done some work at the Child
Protection Team facility on other matters. Ex. Q at 1185-86. Mr.
Miller had two to three conversations with Dr. Joseph. Id. at
1198. Dr. Joseph "opined to [Mr. Miller] that the body change --
a woman's body changes during puberty to the extent that it is
possible for the allegations as purported to have occurred and
there to be no physical evidence on the girl at the age that she
made the accusations." Id. at 1186-87.

120-121.)   Dr. Bain acknowledged that there
could be repeated sexual abuse and the hymen
would still be intact.  (Exhibit "D," pages
132-133.)

Based upon the testimony presented at
trial, this Court finds that the only medical
evidence obtain[ed] by the State was
inconclusive in establishing the guilt or
innocence of Defendant.  Additionally, this
Court finds that Mr. Miller did not render
ineffective assistance.  Mr. Miller discussed
with a doctor the allegations of the victim in
relation to the evidence and lack thereof and
discovered that the ultimate conclusions made
by Ms. Prevatt were possible.  Further, this
Court finds that even had counsel presented a
defense expert, based upon the testimony of
Dr. Bain, the jury would have had to make a
credibility determination between the victim
and Defendant.  Accordingly, this Court finds
that Defendant has failed to establish error
by counsel or prejudice to his case.

Additionally, in sub-claim a, Defendant
alleges that Mr. Miller should have
investigated the victim's medical records,
mental health records, and school history to
discover admissible evidence that the victim
was not exhibiting any signs of being abused,
In Hadden v. State, 690 So.2d 573, 577 (Fla.
1997), the Florida Supreme Court held "expert
testimony offered to prove the alleged victim
of sexual abuse exhibits symptoms consistent
with one who has been sexually abused should
not be admitted." Accordingly, had Mr. Miller
conducted such an investigation, any evidence
discovered, would have been subject to a Frye
challenge and ultimately declared
inadmissible.  Hadden.  Accordingly, this
Court finds that Defendant has failed to
establish error by counsel.  Strickland.

Ex. R at 576-78.

Upon review, there was no unreasonable application of clearly

established law in the state court's decision to reject the

- 21 -

_Strickland_ ineffectiveness claim.  Indeed, the decision of the state court is entitled to deference under AEDPA.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground four, the claim of ineffective assistance of trial counsel, because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  _See_ Supplemental Response at 6-34.

### E.  Ground Five

Petitioner, in ground five, claims his counsel was ineffective for failure to consult with and use a defense medical expert witness.  In the Third Amended Rule 3.850 Motion, the claim was raised in ground 1(b).  The issue was raised on appeal of the denial of the motion, and the First District Court of Appeal affirmed per curiam the decision of the trial court.

The trial court denied this claim.  _See_ Ground Four; Ex. R at 576-78.  The ruling of the state trial court in denying the above-mentioned claim of ineffective assistance of counsel raised in the Third Amended Rule 3.850 Motion resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C.

§ 2254(d).  Further, the decision was affirmed by the state appellate court.

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground five.

### F.  Ground Six

In his sixth ground, Petitioner claims his trial counsel was ineffective for failure to object to the tender of Nurse Practitioner Mary Prevatt as an expert of child sexual abuse.  In the Third Amended Rule 3.850 Motion, the issue was raised in ground 1(e).  The trial court addressed this claim and said:

> In sub-claims c, e, f, i, k and l, Defendant contends that counsel rendered ineffective assistance by "failing to cross examine nurse practitioner Mary Prevatt;" "by failing to object to tender of nurse practitioner Mary Prevatt as an expert on child abuse;" "by conceding that nurse practitioner Mary Prevatt was qualified to testify as an expert;" "by failing to adequately prepare for and cross-examine nurse practitioner Mary Prevatt about her conclusions and the bases for her conclusions;" "failing to cross-examine Nurse Prevatt so as to reveal an inexplicable increase in the number of incidents of sexual abuse claimed by the victim over time;" and "failing to cross-examine Nurse Prevatt so as

- 23 -

to reveal to the jury that Nurse Practitioner Prevatt's formal, college education, was in matters of womens [sic] health, not children's health." (Defendant's Motion, pages 8-9.) Section 90.702, Florida Statutes (1998), provides in pertinent part:

> **Testimony by experts** If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; the opinion is admissible only if it can be applied to evidence at trial.

Based upon Ms. Prevatt's testimony, this Court finds that Mr. Miller would have no basis to object to Ms. Prevatt as an expert. The testimony of Ms. Prevatt established that she had knowledge, skill, experience, training and education in the area of child sex abuse. Specifically, Ms. Prevatt testified that she worked for the Children's Crisis Center since July 1997 as a nurse practitioner and coordinator in the sexual abuse service. (Exhibit "C," pages 357-358.) Ms. Prevatt testified that she has a master's degree from the University of Florida in women's health nursing, an undergraduate degree from North Florida University in sociology and an associate degree in nursing from Florida Community College. (Exhibit "C," page 358.) Ms. Prevatt testified that Dr. Whitworth trained her during a twelve week residency program where she observed him conducting examinations, intensively looked at slide identification and reviewed cases. (Exhibit "C," page 359.) Ms[.] Prevatt testified that she was allowed to do examination with supervision and trained with Astor Ann Hager in Los Angeles. (Exhibit "C," page 359.) Ms. Prevatt testified that she had conducted over 200 exams while working with the Children's Crisis Center and had been previously qualified as an expert in trial. (Exhibit

- 24 -

"C," pages 358-359.)  Additionally, this Court
notes that while Ms. Prevatt's formal training
was in women's health, this would not negate
her having received additional training in the
area of child sexual abuse to qualify as an
expert pursuant to section 90.702, Florida
Statutes (1998).

Further, upon review of the trial
transcripts, this Court notes that Mr. Miller
did cross-examine Ms. Prevatt.  (Exhibit "C,"
pages 380-396, 399-401.)   Specifically,
counsel pointed out that the study relied upon
by Ms. Prevatt was limited in scope.  (Exhibit
"C," pages 383-384.)   Counsel also pointed
out, through Ms. Prevatt, that the victim
could not specify the number of times the
alleged abuse occurred during the interview
nor did she attempt to establish the number of
alleged incidences.  (Exhibit "C," pages 384-
387, 394.)  Ms. Prevatt acknowledged that she
did not take into account time, age and other
events in the victim's life in determining her
findings.   (Exhibit "C," page 394.)   Ms.
Prevatt testified that she was unable to make
a diagnosis of sexual abuse based upon her
examination of the victim.   (Exhibit "C,"
pages 395-396.)  Ms. Prevatt testified that
examination could neither confirm nor negate
the possibility of sexual abuse.  (Exhibit
"C," page 399.)  Ms. Prevatt acknowledged that
if there was a high degree of frequency and
force, if [sic] made sense to her that there
would be a physical finding.  (Exhibit "C,"
pages 399-401.)

During the evidentiary hearing, Mr.
Miller testified that, based upon his
discussions with Dr. Joseph, Ms. Prevatt's
ultimate conclusions were accurate even if
they were slanted and he felt he could cross-
examine her on the slant and he did not need
an expert.  (Exhibit "D," pages 78-80.)  Mr.
Miller testified that he did not feel he
needed an expert to cross-examine Ms. Prevatt
on her prosecution slant.  (Exhibit "D," pages
78-79.)   Mr. Miller testified that he
remembered not being able to get Ms. Prevatt
to deviate from her testimony that size,

- 25 -

degree, and force did not matter since anything was possible. (Exhibit "D," pages 25-26.) Mr. Miller testified that the focus of the trial was not on the report by Ms. Prevatt, but on the increasing number of allegations that the victim was making. (Exhibit "D," pages 22-24, 77-78.) Mr. Miller testified that the victim's original allegations were limited but over time the allegations expanded to a point where the victim's mother admitted that "it's impossible for all of these actions to have occurred because she wasn't even baby-sat by him at the time or the date or the frequency that [A.G.] was saying." (Exhibit "D," pages 21-25.) Mr. Miller acknowledged that he was not prepared for Ms. Prevatt's visual demonstration[11] but he understood the concepts that she was talking about. (Exhibit "D," pages 76-77.) Mr. Miller testified that Ms. Prevatt was a good witness but he felt he effectively questioned her credibility. (Exhibit "D," pages 79-80.)

Moreover, upon review of the transcripts, this Court notes that Ms. Prevatt['s] purpose in testifying was to establish that the victim had been examined for signs of physical abuse but no physical findings were present during the examination. (Exhibit "C," pages 356-401.) Ms. Prevatt acknowledged that her findings were inconclusive and could not establish that the victim had been sexually abused. (Exhibit "C," pages [sic] 380.) Additionally, this Court notes that there was no evidence or testimony presented to establish that Ms. Prevatt spoke with the victim more than once to know that the victim was increasing the number [of] allegations against Defendant. (Exhibit "C.") Ms. Prevatt was only qualified to testify to medical evidence and lack thereof in the victim and Mr. Miller accepted Ms. Prevatt as

---

[11] At trial, Ms. Prevatt utilized a "scrunchy," an elasticized fabric hair ring used to gather or fasten long hair, as a demonstrative aid when explaining the way the hymen stretches to accommodate an object and then goes back to its ordinary size. Ex. B at 389-90.

> an expert for that limit[ed] purpose.
> (Exhibit "C," pages [sic] 359.)  Accordingly,
> this Court finds that Defendant has failed to
> establish error by counsel or prejudice to his
> case.

Ex. R at 578-81.

There is a qualifying state court decision and AEDPA deference is warranted.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground six because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

### G.  Ground Seven

In his seventh ground, Petitioner contends that he received the ineffective assistance of counsel for counsel's failure to object to the expert testimony of Mary Prevatt not meeting admissibility under Frye.  This claim was raised in the Third Amended Rule 3.850 Motion as ground 1(g).  The trial court rejected this claim stating:

> In sub-claims d, g and h, Defendant
> contends that counsel rendered ineffective
> assistance by "failing to produce evidence to
> refute nurse practitioner Mary Prevatt's
> testimony that, based upon a study conducted
> by Ms. Joyce Adams, there are no physical
> findings in 60% of all penile-vaginal sex
> crimes cases," "by failing to object to the
> expert testimony of nurse practitioner Mary

- 27 -

Prevatt and the Joyce Adams [study] referred
to by nurse practitioner Mary Prevatt as not
meeting the Frye test for admissibility
embodied in F.S. section 90.702" and "by
failing to obtain, review, and prepare for the
Joyce study cited by the testimony of nurse
practitioner Mary Prevatt."   (Defendant's
Motion, pages 8-9.)  Upon review of the trial
transcripts, this Court notes that Ms. Prevatt
testified that before a physical examination,
she asked some basic questions regarding the
victim's general health and she then inquired
about a history of the alleged injury so she
would know what to look for during the
physical examination.   (Exhibit "C," page
361.)   Ms. Prevatt testified that in the
present case, she asked the victim what had
occurred and she wrote the response down in
her report.  (Exhibit "C," pages 361-362.)
Ms. Prevatt testified that throughout the
exam, she continued to ask questions about
what happened including what body parts were
touched.  (Exhibit "C," pages 362-364.)  Ms.
Prevatt testified that the victim in the
instant case could not be specific about how
many times the alleged abuse actually
occurred.  (Exhibit "C," pages 363-364.)  Ms.
Prevatt testified that she then explained to
the victim about the examination and what was
going to happened [sic] and during the
examination, she found no physical evidence of
abuse.  (Exhibit "C," pages 364-365.)   Ms.
Prevatt testified that the Joyce Adams study
looked at 204 girls with subset of 60 girls
who had a confirmed sexual battery.  (Exhibit
"C," page 378.)  Ms. Prevatt testified that
60% of that subset of 60 girls had negative
physical findings during their exam as a
result of delay in reporting.  (Exhibit "C,"
pages 378-379.)  Ms. Prevatt testified that
based upon this report, the passage of time
could affect the physical findings of sexual
abuse.  (Exhibit "C," page 379.)  Ms. Prevatt
testified that based upon her physical
examination, she could not confirm nor negate
the possibility of sexual abuse.  (Exhibit
"C," page 380.)  Mr. Miller pointed out the
limited nature of the study to Ms. Prevatt on
cross-examination.  (Exhibit "C," pages 383-

384.)  Ms. Prevatt testified that the victim
was not specific about what Defendant exactly
did and Ms. Prevatt was adamant that the type
of contact did not matter.  (Exhibit "C,"
pages 385-387.)  Ms. Prevatt acknowledged that
a multitude of factors, including frequency,
force, and time were involved in determining
whether there would be physical findings.
(Exhibit "C," page[s] 392-394.)

       During the evidentiary hearing, it should
be noted, that counsel conceded that Dr. Bain
supported Ms. Prevatt's statement that there
are "no objective physical bodily findings of
sexual abuse in the victim's body in a
majority of cases." (Exhibit "D," page[s] 74-
75.)  Counsel also conceded the statistical
information in the report was moot.  (Exhibit
"D," pages 74-75.)  Dr. Bain testified that
"the more times the vaginal area is penetrated
the greater likelihood that there will be
hymenal findings," but acknowledged that there
would be cases w[h]ere no findings were
present.  (Exhibit "D," pages 105-107, 117-
118.)  Dr. Bain testified that a premenarche
girl would be more susceptible to damage than
a postmenarche girl if the same trauma was
done.  (Exhibit "D," page 117.)  Dr. Bain
testified that in a majority of cases there
are no findings but [that] does not mean the
abuse did not take place and that any type of
abuse could leave no findings.  (Exhibit "D,"
pages 120-121.)  Dr. Bain acknowledged that
there could be repeated sexual abuse and the
hymen would still be intact.  (Exhibit "D,"
pages 132-133.)

       Mr. Miller conceded that he failed to
obtain and read the Joyce Adams report relied
upon by Ms. Prevatt.  (Exhibit "C," pages 73-
74.)  Mr. Miller testified that during his
cross-examination of Ms. Prevatt, he attempted
to point out the flaws in the study, including
the limited nature of the study, but Ms.
Prevatt would not deviate from her
conclusions.  (Exhibit "D," pages 40-41.)
Accordingly, this Court finds that Defendant
has failed to establish any prejudice as a

result of any alleged error by counsel. <u>Strickland</u>.

Ex. R at 581-84.

There is a qualifying state court decision, and the rejection of this claim is entitled to deference under AEDPA. Upon a thorough review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>See</u> Supplemental Response at 45. Accordingly, Petitioner is not entitled to relief on the basis of ground seven.

### H.  Ground Eight

Petitioner, in his eighth ground, claims his counsel was ineffective for failure to prepare for and counter the testimony of Nurse Practitioner Mary Prevatt. This claim was raised in the Third Amended Rule 3.850 motion as ground 1(i). This claim was rejected by the trial court. <u>See</u> Ground Six; Ex. R at 578-581.

Deference under AEDPA will be given to this decision; the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>See</u> Supplemental Response at 48.

## I.  Ground Nine

In ground nine, Petitioner claims his trial counsel was ineffective for failure to suppress, exclude and object to Petitioner's confession.   The issue was presented in the Third Amended Rule 3.850 Motion as ground three and was denied.   The denial was per curiam affirmed on appeal.

At the evidentiary hearing on the Third Amended Rule 3.850 Motion, Mr. Miller, defense counsel at trial, attested on cross-examination:

> Q   As to the issue of the motion to suppress, would it be fair to say you wanted to maintain the element of surprise and that's why you didn't file the pretrial motion?
>
> A   Yes.   I do recall speaking with Mr. Hitchcock about that.
>
> Q   And you agreed that it would be better to let the jury decide rather than let the judge decide on that issue?
>
> THE COURT:  Let the jury decide what?
>
> MS. PALMER:  The issue -- I guess, not the motion to suppress, but to take into account what bearing that had on the confession.
>
> A   Based on my experience, I had a pretty good idea what Judge Day's ruling was going to be in that regard.
>
> Q   So it was a strategic decision based on all the circumstances?
>
> A   Correct.
>
> Q   Okay.

THE COURT:  So on that motion to suppress it would have come down to the credibility of whether the judge chose to credit the testimony of Detective Eason in saying he did not promise probation as opposed to Mr. Hitchcock who would have testified that he did promise probation; is that it?

MR. MILLER:  Probation versus life, yes, sir.  There was no independent -- there was [sic] no third parties there, there was nothing on videotape.  It was Detective Eason's word against Mr. Hitchcock, and it would have come down to credibility, yes, sir.

THE COURT:  Thank you.  Okay.

Ex. Q at 1246-47.

After an evidentiary hearing, the trial court denied this ground, finding:

In ground three, Defendant asserts that counsel rendered ineffective assistance by "failing to suppress, exclude, and object to" the confession.  During the evidentiary hearing, Mr. Miller testified that he attempted to argue to the jury that the confession was involuntary based upon Defendant's state of mind.  (Exhibit "D," pages 46-47.)  Mr. Miller testified that his argument was that Defendant's confession was involuntary based upon a promise of probation by Detective Eason.  (Exhibit "D," pages 47-49.)  Mr. Miller testified that his decision to not file a pretrial Motion to Suppress the confession was a strategic decision.  (Exhibit "D," page 49.)  Mr. Miller testified that he believed that Detective Eason would have denied making the promise and by not filing a Motion to Suppress the State would not be able to prepare for that "line of attack" at trial.  (Exhibit "D," pages 49-52.)  Mr. Miller testified that he discussed with Defendant "the advantages of not filing such a motion and the benefit of surprise at trial." (Exhibit "D," page 52.)

- 32 -

Defendant testified that the only attempt to discredit the validity of the confession was done at trial. (Exhibit "E," pages 32-33.) Defendant testified that Mr. Miller felt it was better for the jury to hear the conditions of the confession directly from him. (Exhibit "E," page 33.) Defendant testified that he and Mr. Miller discussed the benefits of a surprise attack at trial and he relied upon his attorney's advice. (Exhibit "E," pages 33-35.) Defendant testified that he originally denied the allegations to Detective Eason during the interrogation. (Exhibit "E," pages 51-53.)

This Court finds that counsel's decision not to file a pretrial Motion to Suppress the confession amounted to trial strategy and therefore is not subject to ineffective assistance of counsel. Remetta v. Dugger, 622 So. 2d 452 (Fla. 1993); Gonzales v. State, 691 So. 2d 602, 603 (Fla. 4th DCA 1997) ("Tactical or strategic decisions of counsel do not constitute ineffective assistance of counsel.")

Additionally, this Court notes that even if counsel had filed a Motion to Suppress the confession, the Motion would have most likely failed. In Maqueira v. State, 588 So. 2d 221, 223 (Fla. 1991), the Florida Supreme Court held that "the fact that a police officer agrees to make one's cooperation known to prosecuting authorities and to the court does not render a confession involuntary." During the evidentiary hearing, Defendant testified that he was told that the State would be made aware of his cooperation and he would probably only get probation based upon his lack of a prior record and military service. (Exhibit "E," pages 54, 59.) Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

Ex. R at 584-86.

Upon appeal of the denial of the Rule 3.850 motion, the appellate court per curiam affirmed the trial court's decision.

Thus, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim of ineffective assistance of counsel raised in ground nine.

### J.  Ground Ten

In ground ten, Petitioner claims counsel was ineffective for failure to object to a discovery violation by the state. This issue was raised in ground four of the Third Amended Rule 3.850 Motion. In denying this ground, the trial court held:

> In ground four, Defendant asserts that the State committed a <u>Brady</u> violation by withholding the evidence of the Joyce Adams report relied upon by the Nurse Practitioner Mary Prevatt. This Court notes that "the defendant must prove three elements to establish a <u>Brady</u> claim: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence has been suppressed by the State, either willfully or

- 34 -

> inadvertently; and (3) prejudice has ensued."
> Butler v. State, 842 So.2d 817, 830 (Fla.
> 2003).  During the evidentiary hearing, Mr.
> Miller testified that he learned of the Joyce
> Adams report during the deposition of Mary
> Prevatt.  (Exhibit "D," page 39.)  Defendant
> testified that he also knew of the report
> based upon review [of] the deposition of Mary
> Prevatt and discussions with Mr. Miller.
> (Exhibit "E," pages 35-36.)  Accordingly, this
> Court finds that Defendant has failed to
> establish a Brady violation by the State.

Ex. R at 586 (footnote omitted).

The decision of the state court is entitled to deference under AEDPA.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground ten, the claim of ineffective assistance of trial counsel, because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See Supplemental Response at 50-51.

This Court finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails."  Knowles v. Mirzayance, 129

S.Ct. 1411, 1420 (2009).  Therefore, Petitioner is not entitled to

habeas corpus relief on ground ten.

### K.   Ground Eleven

Petitioner, in ground eleven, claims his trial counsel was

ineffective for admitting the team assessment summary, a hearsay

document, into evidence.  This issue was raised in the Third

Amended Rule 3.850 Motion as ground five.  The trial court rejected

this claim, finding:

> In ground five, Defendant asserts that
> counsel rendered ineffective assistance by
> allowing the Team Emergency Assessment Summary
> to be improperly admitted into evidence during
> trial.  During the evidentiary hearing, Mr.
> Miller testified that the defense strategy at
> trial was to attack the credibility of the
> victim's allegations as being "absurd" based
> upon the increasing number of incidences she
> was alleging.  (Exhibit "D," pages 22, -25
> [sic], 77-78.)  Mr. Miller testified that he
> [sic] introduction of the entire report into
> evidence was a strategic decision to show the
> victim's increasing allegations of abuse.
> (Exhibit "D," pages 82-83.)  Defendant
> acknowledged that the trial strategy was to
> show the jury the improbability of the
> victim's allegations based upon the volume of
> incidences she was reporting.  (Exhibit "E,"
> pages 29-31.) This Court finds that counsel's
> decision [to] admit the Team Emergency
> Assessment Summary amounted to trial strategy
> and therefore is not subject to ineffective
> assistance of counsel.  <u>Remetta</u>; <u>Gonzales</u>.
> Accordingly, this Court finds that Defendant
> has failed to establish error by counsel or
> prejudice to his case.

Ex. R at 586-87 (footnote omitted).

This decision on Petitioner's claim of ineffective assistance

of counsel is entitled to deference under AEDPA.  Upon a thorough

- 36 -

review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Accordingly, Petitioner is not entitled to relief on the basis of ground eleven.  <u>See</u> Supplemental Response at 52-56.

## VIII.  Certificate of Appealability

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted.  <u>See</u> Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of December, 2011.

_____

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sa 12/13
c:
Michael Hitchcock
Ass't A.G. (Conley)